**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**Western Division**

**BETTY BRADFROD**

           **Plaintiff**                          Case No.  5:24-cv-84-DCB-ASH

  **v.**

**REICH INSTALLATION SERVICES, INC.**

           **Defendant.**

## COMPLAINT

COMES NOW Plaintiff, BETTY BRADFORD, by and through undersigned counsel and hereby brings this civil action pursuant to Title VII of the Civil Rights Acts of 1964 ("Title VII") as amended, 42 U.S.C. §2000 et seq and 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981") et seq and Age Discrimination in Employment Act of 1967, 29 U.S.C. §621 against REICH INSTALLATION SERVICES, INC. for age, gender, and race discrimination and hostile work environment.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C.§ 1331 (federal question jurisdiction), Title of the Civil Rights Act of 1964, 42 U.S.C. §2000(e)(5)(f)(3). et seq., Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, and 28 U.S.C. §1343(a)(4) (jurisdiction over suits involving congressional acts involving civil rights).

2. Venue is proper in this judicial district under 42 U.S.C. 2000e-5(f)(3) as Plaintiff was employed at Reich Installation Services, Inc. at its location in the Brookhaven, Mississippi area at the time of the discrimination complained of, and several of the incidents and decisions

adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

## PARTIES

3. Ms. Betty Bradford ("Plaintiff" or "Ms. Bradford") is a fifty- eight (58) year old, white female, a citizen of the United States, and a resident of the state of Kentucky. During time periods relevant to this suit, Plaintiff worked for Defendant at its location in Brookhaven, Mississippi.

4. Reich Installation Services, Inc. ("RIS") was founded in 1989 to meet the growing needs of the material handling industry. It has grown to be a "national provider of custom installation services with the goal to create a strong and motivated workforce to exceed industry." The company is headquartered in Pewaukee, Wisconsin, but operates jobsites in the state of Mississippi. RIS can be served through its registered agent Business Filings Incorporated at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

## FACTS COMMON TO ALL COUNTS

5. Betty Bradford became employed with RIS as a safety coordinator on or about May 11, 2022. Ms. Bradford worked as part of a safety team that traveled to jobsites across the country. Ms. Bradford's job duties included working Walmart Distribution Center Warehouse projects in Ohio, Tennessee, Texas, and Brookhaven, Mississippi.

6. Ms. Bradford came to RIS with nearly ten (10) years of experience in the travel construction industry having been a general laborer and working on projects of installing conveyor systems. She also had almost three years of experience as an OSHA 30 certified safety coordinator. As such, Ms. Bradford was well qualified for her position with RIS.

7. About July 2022, Ms. Bradford began to In March or April 2023, began to be

subjected to disparaging comments from a co-worker, Jassiel Roche. Mr. Roche would refer to Ms. Bradford as an old white woman. He would state that Ms. Bradford was "too old for this kind of work" and tell her she did not belong there.

    8. Mr. Roche also remarked on occasion that "Mexican men only liked old white women for one thing." He also stated that "since this company hires women, I'm going to get my wife hired to replace you." Mr. Roche also call Ms. Bradford "stupid."

    9. A few weeks after Mr. Roche began this behavior, a safety supervisor, Andrew Mueller, visited the site Ms. Bradford was assigned to at the time. Ms. Bradford reported Mr. Roche's conduct to Mr. Mueller. Mr. Mueller merely responded that Mr. Roche had not said those things and that Ms. Bradford was not Roche's boss.

    10. Mr. Mueller did not discipline or address Mr. Roche. Mueller merely berated Ms. Bradford for allegedly not submitting documentation.

    11. Mueller excluded Ms. Bradford from lunch meetings with management teams. He also told Ms. Bradford that she was not allowed to speak with general managers, safety teams, Fluor personnel, Ms. Sharon Rangoolam, or Bobby Snyder. He stated that only Mr. Roche would communicate with them.

    12. This caused Ms. Bradford to experience anxiety and humiliation, and a panic attack. She sent a text message to Dylan Knudson, the Human Resources Manager that day. The next day, on or about August 5, 2022, Ms. Bradford contacted her manager, Joel Williams, to report her experience with Mr. Mueller and Mr. Roche. Williams told Ms. Bradford that he would contact Mr. Knudson and have him contact her.

    13. On or about the same day, Ms. Bradford was able to speak to Mr. Knudson. She again

reported her experiences with Mr. Mueller and Mr. Roche. Knudson told Ms. Bradford that he would address Mueller about his conduct that afternoon. Knudson also held a team's meeting attended by Ms. Bradford, Jose Mendez, Fernando Saldana, and Elaina Saldana in which he instructed the parties to "get along with each other."

14. Upon information and belief neither Mr. Mueller nor Mr. Roche were disciplined for their conduct toward Ms. Bradford. However, on or about August 5, 2022, Ms. Bradford received a text message from Mueller in which he stated, "I apologize if I upset you or if you thought that I was targeting you." His message claimed that his intent had been to "align our safety processes across all sites."

15. Upon information and belief, Andrew Mueller was promoted soon after this incident.

16. Following her report, Mr. Roche escalated his harassment of Ms. Bradford. Mr. Roche continued to make comments to her that this was "man's work." He would yell at her not to talk to him when she attempted to speak with him about work responsibilities.

17. On or about August 11, 2022, Ms. Bradford made another report to Dylan Knudson about Mr. Roche's conduct. On or about the next day, Knudson informed Ms. Bradford that she was being transferred to Texas.

18. While in Texas, Ms. Bradford was not afforded the same level of accommodation as her colleagues. She was not lodged with other management and had to obtain transportation at her own expense. Despite this, she performed well until about November 15, 2022. Andrew Mueller contacted Bradford and told her to "leave the site immediately." Bradford was shocked and humiliated. Mueller ordered her to report to Tennessee the next day.

19. Ms. Bradford remained in Tennessee until December 2022. She was prepared to visit

with her son during a planned site shutdown and holiday break. On or about December 12, 2022, Ms. Bradford spoke with Ms. Daniela Asad-Martinez to confirm whether those working at the Tennessee site needed to add their names to a holiday vacation list. Ms. Asad-Martinez confirmed that the names did not need to be added as they would follow the site schedule.

20. However, on December 13, 2022, Ms. Bradford was informed that she would need to report to Brookhaven, Mississippi to relieve Justin Morris. Dylan Knudson told Bradford that she would be assigned to the Brookhaven site for the remainder of the project. This meant she would not have the holiday break, as she would be obligated to remain near the jobsite during the holiday in case of emergency. Upon information and belief, Morris took the holiday break instead of Bradford.

21. Ms. Bradford spent approximately two weeks working in Brookhaven, Mississippi before she was told that Jassiel Roche was taking over the Mississippi jobsite. On or about New Year's Eve 2022, Bradford was instructed to go to an Ohio jobsite. She was at the Ohio jobsite only three days before being sent to another state.

22. Ms. Bradford was assigned to Brookhaven, Mississippi on more than one occasion during her employment with RIS. While assigned to Brookhaven, Ms. Bradford was lodged in McComb Mississippi. Her male coworkers had better lodging in Brookhaven.

23. Ms. Bradford was reassigned to Brookhaven, Mississippi sometime in March 2023. Upon returning to the Brookhaven jobsite, Ms. Bradford had to work with Mr. Roche. Ms. Bradford was again excluded from site management meetings. Mr. Roche relegated her to secretarial duties such as making signs.

24. On or about March 16, 2023, Mr. Roche asked Ms. Bradford to make aisle signs

stating that the aisles were safe to enter. Bradford made the signs as requested, but when she inspected the aisles, she discovered that many walkway gratings were not secured and some of the braces were half hung. Bradford could not and did not hang any signs. She instead photographed the safety issues she had discovered. She reported the safety issues to Mr. Roche and left the signs she had made at the safety workstation.

25. On or about March 17, 2023, while again being excluded from the morning's site management meeting, Ms. Bradford was approached by the electrical contractor. The contractor echoed the concerns that Bradford had reported the previous day and inquired about when the aisles would be completed so that work could proceed.

26. Ms. Bradford attempted to contact Mr. Roche, a Mr. Newman, and the RIS Site Quality Control Manager. The parties only responded to the urgent messages Bradford sent after the electrician claimed a near miss incident. When Mr. Rocha, Mr. Brian Dooley, and others arrived at the site of the near miss, a sign was observed hanging.

27. At approximately 10:20 am that day, before Bradford could finish her statement that OSHA would require, Mr. Fernando Olivas approached her with a message from Joel Williams instructing her to leave the site and wait in her motel for his call.

28. Sometime around 11:21am, Brian Dooley sent an email to Joel Williams and others falsely accusing Ms. Bradford of providing false statements and obstructing an HSE investigation.

29. Ms. Bradford was devastated and felt as if her professional reputation was being destroyed. After corresponding with Joel Williams and others over the next few days to answer questions about the incident, Ms. Bradford felt that she had no choice other than to resign. On or about March 22, 2023, Defendant constructively terminated Ms. Bradford's employment.

30. Plaintiff timely filed an EEOC Charge of Discrimination for Age, Gender, and Race discrimination on August 23, 2023. (*See* Ex. A)

31. Plaintiff exhausted all administrative remedies and at all times has fully cooperated with the EEOC investigation. Plaintiff received a right to sue letter from the EEOC dated June 6, 2024, and timely files this lawsuit.

## COUNT I
## DISCRIMINATION BASED ON RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

32. The Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

33. Title VII of the Civil Rights Act of 1964, as amended, makes it an unlawful practice to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

34. Defendant discriminated against Plaintiff based on her race by treating her differently than her Hispanic colleagues in regard to allowing her colleagues to make comments about her race with impunity. On more than one occasion Ms. Bradford was referred to as an "old white woman" by her Hispanic colleague. The same colleague states that "Mexican men only like old white women for one thing." Bradford reported this to management. However, Defendant failed to address the behavior and instead condoned it. Defendant instead moved Plaintiff to another jobsite and later required her to work with the same colleague. Defendant thus engaged in intentional and unlawful bias against Plaintiff because of her race.

35. As a direct and proximate cause of Defendant's actions, Plaintiff suffered economic losses, emotional distress, humiliation, and other damages.

## COUNT II
## VIOLATION OF 42 U.S.C. §1981- RACIAL DISCRIMINATION

36. The Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

37. As stated herein, the Defendants engaged in their discriminatory practices by treating Plaintiff, a white female differently than her Hispanic colleagues in job assignments, lodging, other benefits, and in allowing a Hispanic colleague to continue to antagonize her based on her race, and by excluding her from meetings. Defendant acted in a manner that is arbitrary and discriminatory.

38. Defendant's actions were intentional, willful, and taken with wanton disregard of Plaintiffs's right to be free from discrimination under Section 1981.

39. As a direct, legal, and proximate result of Defendant's unlawful discrimination, Ms. Bradford has suffered economic losses, emotional distress, humiliation, and other damages.

## COUNT III
## DISCRIMINATION BASED ON GENDER IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

40. The Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

41. Title VII makes it unlawful practice to discharge any individual, or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42. Defendant discriminated against Ms. Bradford by allowing male employees to

repeatedly make comments to her regarding women in the workplace, failing to address inappropriate behavior by male colleagues, excluding Ms. Bradford from management meetings, and failing to provide benefits and other accommodations to Ms. Bradford that her male colleagues received.

43. Defendants have engaged in intentional, willful, and malicious unlawful discrimination against Ms. Bradford because of her gender.

44. As a direct, legal, and proximate result of Defendants' unlawful discrimination actions, Ms. Bradford. has suffered humiliation, emotional distress, economic damages, and other damages.

## COUNT IV
## DISCRIMINATION BASED ON AGE

45. The Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

46. The Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, makes it an unlawful practice to discharge any individual, or otherwise to discriminate against any individual age forty (40) or older with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's age.

47. Defendant failed on numerous occasions to address or correct conduct by Mr. Roche where he referred to her as old or told her to go home and be a grandmother. Instead, the Defendant denied that the conduct occurred and moved Ms. Bradford from site to site in a manner that it did not employ with her younger male colleagues.

48. Defendant's conduct was willful and punitive. Its stated reasons for its treatment of Ms. Bradford are pretext for unlawful discrimination.

49. As a direct, legal, and proximate result of Defendant's unlawful conduct

Ms. Bradford has suffered humiliation, emotional distress, lost wages, economic damages, and other damages.

## COUNT V
### HOSTILE WORK ENVIRONMENT

50. The Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

51. Defendant subjected Ms. Bradford to a continuous and pervasive hostile work environment based on her age, gender, and race in violation of the ADEA and Title VII.

52. Ms. Bradford was a white female safety coordinator and was regularly subjected to derogatory racist and sexist comments from a coworker. She was often referred to as old and told she did not belong there.

53. Defendant also engaged in a pattern of ongoing behavior of discrimination against Ms. Bradford that included: excluding her from the management meetings; failing to provide her with benefits and accommodations equivalent to younger and male colleges; failing to address her complaints about being harassed by a colleague or to discipline said colleagues, and instead moving her from jobsite to jobsite in a manner not used with other colleagues and purposefully limiting or interfering with her contact with others on jobsites

54. Defendant knew or should have known of the harassment and disparate treatment against Bradford.

55. All of Defendants actions and omissions combined, caused Ms. Bradford's continuous humiliation and interfered with Ms. Bradford's ability to fulfill her job requirements.

56. As a direct, legal, and proximate result of Defendant's unlawful discrimination actions, Ms. Bradford has suffered severe humiliation, emotional distress, emotional distress, lost wages, economic damages, and other damages.

**WHEREFORE,** Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the State of Mississippi;

B. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and physical injuries;

F. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

G. An award of punitive damages;

H. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

I. Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury.

                                                                                   Respectfully Submitted,
                                                                                   BETTY BRADFORD

PRESENTED BY:

/s/ *Darrian A. Denman*

Darrian A. Denman, MSB#105159
THE DENMAN LAW FIRM, PLLC
4780 I-55 N, Suite 100
Jackson, Mississippi 39211
Telephone: (601) 899-0141
Facsimile: (601) 709-4611
dadenman@denman-law.com