IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


BETTY BRADFORD                                          PLAINTIFF

v.                          CAUSE NO.: 5:24-CV-00084-DCB-ASH

REICH INSTALLATION SERVICES                             DEFENDANT


ORDER

This matter is before the Court on Plaintiff Betty Bradford's Motion for Default Judgment against Defendant Reich Installation Services ("Reich") [ECF No. 6]. Plaintiff filed her complaint [ECF No. 1] on September 2, 2024, and since then Defendant has not filed any answer or otherwise defended or participated in this action. Therefore, on October 24, 2024, Plaintiff filed for default judgment pursuant to Federal Rule of Civil Procedure 55(b), asking that the Court award her "lost wages, emotional and mental anguish, and attorney's fees in an amount to be determined at an evidentiary hearing." [ECF No. 6] at 1-2. On July 15, 2025, the Court held an evidentiary hearing at which Plaintiff presented evidence to establish the monetary amounts of her damages. The Court finds that Plaintiff's Motion for Default Judgment should be GRANTED IN PART and DENIED IN PART.

I.   Background

Plaintiff filed this complaint for gender and race

discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1, et seq., for race discrimination pursuant to 42 U.S.C. § 1981, and for age discrimination pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621.

Bradford began her employment with Defendant on or about May 11, 2022, working as part of a safety team that traveled to jobsites across the country. [ECF No. 1] ¶ 5. She came to Reich with nearly ten years of experience in the travel construction industry and almost three years of experience as an OSHA 30 certified safety coordinator. Id. ¶ 6. Bradford claims that over the course of her employment she was subjected to a number of disparaging remarks about her age, race, and sex from a co-worker, Jassiel Roche. Id. ¶ 7. According to Bradford, he would refer to her as an "old white woman," stating that she was "too old for this kind of work," that she did not belong at the company, and that "Mexican men only liked old white women for one thing." Id. ¶¶ 7-8. Bradford's complaint also states that Roche called her "stupid" and stated that "since this company hires women, I'm going to get my wife to replace you." Id. ¶ 8.

Bradford alleges that she reported this behavior to Andrew Mueller, a visiting safety supervisor, a few weeks after it began. Id. ¶ 9. The complaint states that Mueller replied that Roche had not said those things and "berated Ms. Bradford for allegedly not

submitting documentation." Id. ¶¶ 9-10. Bradford claims that after she made this report, Mueller excluded her from lunch meetings with management teams and told her "that she was not allowed to speak with general managers, safety teams, [floor] personnel, Ms. Sharon Rangoolam, or Bobby Snyder. He stated that only Mr. Roche would communicate with them." Id. ¶ 11.

Bradford alleges that on or about August 11, 2022, she reported Roche's conduct to a Dylan Knudson and that on or about a day after her report, Knudson informed her she was being transferred to Texas. Id. ¶ 17. She claims that while in Texas, she "was not afforded the same level of accommodation as her colleagues." Id. ¶ 18. Specifically, Plaintiff claims that she was not lodged with other management and had to obtain transportation at her own expense until on November 15, 2022, when Mueller told her to "leave the site immediately." Id. She was then ordered to report to Tennessee the next day, where she remained until December 2022. Id. ¶ 19. In December 2022, Bradford made plans to visit with her son during a planned jobsite shutdown and holiday break. Id. She confirmed with another employee that those working at the Tennessee site did not need to add their names to a holiday vacation list because the site would be shut down over the holidays. Id. However, Bradford alleges that the next day she was informed that she had to report to Brookhaven, MS for the remainder of the project there, and that she would relieve a Justin Morris

3

who, "upon information and belief, took the holiday break instead of Bradford." Id. ¶ 20.

Plaintiff had worked at the Brookhaven jobsite for two weeks when she learned that Roche would be taking over the site, and on or about December 31, 2022, she was instructed to leave for an Ohio jobsite. Id. ¶ 21. She was at the Ohio jobsite for three days before being sent to another state. Id. Ms. Bradford alleges that she was stationed in Brookhaven at least twice while employed by Reich, and that while there she was lodged in McComb, Mississippi, while her male coworkers had better lodging in Brookhaven. Id. ¶ 22. Bradford was reassigned to Brookhaven in March 2023, where she once again worked under Roche and was once again excluded from site management meetings. Id. ¶ 23. She claims that "Mr. Roche relegated her to secretarial duties such as making signs."

Plaintiff recounts an incident in March 2023 which she claims led to her constructive termination. On or about March 16, 2023, Bradford alleges that Roche asked her to make aisle signs stating the aisles at the site were safe to enter. Id. ¶ 24. Plaintiff claims that she made the signs as instructed but "could not and did not" hang any signs because she observed that many walkway gratings in the aisles were not secured and some of the braces were half-hung. Id. She instead photographed the safety issues and reported them to Roche, leaving the signs at the safety workstation. Id.

4

Bradford asserts that on or about March 17, 2023, while she was yet again excluded from the site management meetings, she was approached by the electrical contractor who echoed her concerns about aisle safety and inquired when the aisles would be completed so that the work could proceed. Id. ¶ 25. Bradford claims that she attempted to contact Roche and the Reich Site Quality Control Manager, but that no one responded until the electrician claimed a near miss incident. Id. ¶ 26. According to Bradford, at about 10:20 a.m. that day, before she could finish her statement as required by OSHA, she was approached by a Reich employee instructing her to leave the site and wait in her motel for a call from a Joel Williams. Id. ¶ 27. Around 11:21 a.m., a Brian Dooley sent an email to Joel Williams and others "falsely accusing Ms. Bradford of providing false statements and obstructing an HSE investigation." Id. ¶ 28. According to Bradford, she "felt as if her professional reputation was being destroyed" and, after a few days of communicating with Joel Williams about the incident, she "felt she had no choice other than to resign." Id. ¶ 29. She claims that Defendant Reich constructively terminated her employment on or about March 22, 2023. Id. Plaintiff then timely filed an EEOC Charge of Discrimination for Age, Gender, and Race Discrimination on August 23, 2023, attached to the complaint as Exhibit A. Id. ¶ 30. She received her right to sue letter from the EEOC dated June 6, 2024, and timely filed this lawsuit. Id. ¶ 31.

Summons were issued as to Reich on October 22, 2024, and returned executed on October 30, 2024. Defendant failed to respond. Therefore, the clerk's office filed an entry of default against Reich on January 15, 2025, upon Bradford's motion. Plaintiff now moves that this Court enter a default judgment for race, sex, and age discrimination and seeks the following damages: (1) back pay; (2) emotional and mental anguish; and (3) attorney's fees. [ECF No. 6] at 2.

II.  Legal Standard

Rule 55 of the Federal Rules of Civil Procedure governs the entry of default and subsequent default judgment. When considering whether to enter a default judgment, the Court first must decide whether it is procedurally appropriate to do so. Hill v. Enchantment Hotels, Inc., No. 4:23-CV-00979-O, 2024 WL 3427040 at *2 (N.D. Tex. July 16, 2024). To make this determination, the Court weighs the following non-exhaustive list of six factors: (1) if the default was caused by a good faith mistake or excusable neglect; (2) if there has been substantial prejudice; (3) the harshness of a default judgment; (4) if there are material issues of fact; (5) if grounds for a default judgment are clearly established; and (6) if a court would think itself obligated to set aside the default on the defendant's motion. Lindsey v. Prive Corp., 161 F.3d 886, 893 (5th Cir. 1998).

Second, "the Court assesses the merits of the plaintiff's

claims and the sufficiency of the complaint." Hill, 2024 WL 3427040 at *2.    Upon default, the plaintiff's well-pleaded factual allegations are taken as true, except those regarding damages. See Nishimatsu Const. Co. Ltd. V. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975); see also Leebo Cabinetry v. James Sales & Distribution, Inc., 157 F.3d 410, 414 (5th Cir. 1998). The Fifth Circuit has explained that "a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." Nishimatsu Const. Co. Lt., 515 F.2d at 1206 (footnotes omitted). "The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Id.; see also, 10 Wright & Miller, Federal Practice and Procedure 282. Entries of default are generally disfavored in the law. Lacy v. Sitel Corp., 227 F.3d 290, 292 (5th Cir. 2000).

Third, the Court "resolves any remaining issues regarding the requested amount of damages." Hill, 2024 WL 3427040 at *2. "A default judgment is a judgment on the merits that conclusively establishes the defendant's liability." United States v. Shipco Gen., Inc., 814 F.2d 1011, 1014 (5th Cir. 1987). However, as explained above, a

default judgment does not establish the amount of damages; the movant must provide the Court with a detailed factual basis to support their request for damages. See <u>United Artists Corp. v. Freeman</u>, 605 F.2d 854, 857 (5th Cir. 1979).

III. Analysis

A. Entry of Default Judgment is Procedurally Appropriate

Having weighed the six <u>Lindsey</u> factors, the Court determines that entry of default judgment is procedurally appropriate at this juncture. First, there is no evidence to suggest that Defendant's failure to appear was caused by a good faith mistake or excusable neglect; Plaintiff successfully served Defendant's registered agent in the state of Mississippi, and Defendant has not responded or otherwise appeared in this suit. Second, Defendant's failure to appear causes substantial prejudice to Plaintiff because it prevents her from receiving expeditious relief. Third, Defendant's complete failure to respond, despite receiving proper service, mitigates the harshness of the default judgment. See <u>Hill</u>, 2024 WL 3427040 at *3; <u>United States v. Fincanon</u>, No. 7:08-cv-61-O, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (citing <u>Lindsey</u>, 161 F.3d at 893) Fourth, there are no disputed material issues of fact as defendant has failed to appear or file any response in this case. Fifth and finally, though Defendant has not challenged the Default in this case, the Court is unaware of any "good cause" that would require it to set aside the default if it is later

attacked. Therefore, Plaintiff's well-pleaded facts are accepted as true.

Procedurally, there is no evidence that Defendant is an infant, incompetent, or engaged in military service. Thus, having reviewed the applicable law and circumstances of this case, the Court finds that granting default judgment is procedurally appropriate.

B. Bradford's Pleadings Establish a Sufficient Basis for Default Judgment

The Court accepts as true all facts well-pleaded allegations in Plaintiff's complaint. See Nishimatsu Const. Co. 515 F.2d at 1206. For a plaintiff to obtain a default judgment, the allegations ""need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" See Wooten v. McDonald Transit Assocs., Inc., 788 F.3d 490, 498 (5th Cir. 2015) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Therefore, "detailed factual allegations are not required." Hill, 2024 WL 3427040 at *3. Here, Bradford raises a claim of discrimination on the basis of race and sex under Title VII of the Civil Rights Act of 1964; on the basis of race under 42 U.S.C. § 1981; and on the basis of age under the Age Discrimination in Employment Act of 1967. Having reviewed the pleadings, the Court determines that Plaintiff has provided a sufficient factual basis

for default judgment to be granted.

    i.   Plaintiff's Title VII Claims

    Title VII of the Civil Rights Act of 1964 states that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex." 42 U.S.C. § 2000(e)-2(a)(1). A plaintiff bringing a claim under Title VII bears "the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." _International Bhd. of Teamsters v. United States_, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). "A plaintiff may use either direct or circumstantial evidence to prove a case of intentional discrimination." _Portis v. First Nat. Bank of New Albany, Miss._, 34 F.3d 325, 328 (5th Cir. 1994), _as amended on denial of reh'g_ (Nov. 10, 1994) (citing _United States Postal Serv. Bd. of Governors v. Aikens_, 460 U.S. 711, 714, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). Direct evidence, which is rare, consists of "evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption." _Id._ 328-329 (quoting _Brown v. East Miss. Elec. Power Ass'n_, 989 F.2d 858, 861 (5th Cir.1993)).

    When a plaintiff attempts to prove her case using

circumstantial evidence, as Bradford does, her complaint must meet the McDonnell Douglas test. Hill v. Enchantment Hotels, Inc., No. 4:23-CV-00979-O, 2024 WL 3427040 at *4 (N.D. Tex. July 16, 2024); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Urbano v. Cont'l Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998), abrogated on other grounds by Young v. United Parcel Serv., Inc., 575 U.S. 206 (2015). Here, Bradford raises two claims under Title VII for wrongful termination and hostile work environment.

      1. Wrongful termination

To make out a prima facie case for wrongful termination under the McDonnell Douglas test, a plaintiff must show:

    (1)  "She was a member of a protected class,

    (2)  She was qualified for the position she lost,

    (3)  She suffered an adverse employment action, and

    (4)  That others similarly situated were more favorably treated."

Urbano, 138 F.3d at 206.

Under this test, termination of employment is considered an adverse employment action. Hill, 2024 WL 3427040 at *4 (citing Garner v. Stageline Co., No. 4:21-CV-0385-P, 2022 WL 3928400, at *3 (N.D. Tex. Aug. 30, 2022). Ms. Bradford is a member of a protected class; she claims discrimination based on her race and her sex. Her complaint also evidences her qualifications for the position she lost. She was employed with Reich as a safety

coordinator after nearly ten years of experience in the travel construction industry as a general laborer and working on conveyor system installations. [ECF No. 1] ¶ 6. She also had almost three years of experience as an OSHA 30 certified safety coordinator. Id.

The adverse employment action Bradford claims is wrongful termination. Though Bradford ultimately resigned from her position at Reich, "a resignation may still constitute an adverse employment action 'if the resignation qualifies as a constructive discharge. To prove a constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign.'" Brown v. Liberty Mut. Grp., Inc., 616 F. App'x 654, 657 (5th Cir. 2015) (quoting Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001)). "This is an objective standard, and what is subjectively intolerable to a particular employee may strike a court or jury as merely unpleasant." Green v. Brennan, 136 S. Ct. 1769, 1789 (2016) (Alito, J., concurring in the judgment) (citing Pa. State Police v. Suders, 542 U.S. 129, 141 (2004)); accord Noack v. YMCA, 418 F. App'x 347, 352 (5th Cir. 2011) (citing Stover v. Hattiesburg Pub. Sch. Dist., 549 F.3d 985, 991 (5th Cir. 2008); Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 481 (5th Cir. 2008)).

"Part of an employee's obligation to be reasonable is an obligation not to assume the worst and not to jump to conclusions

too fast." Dornhecker v. Malibu Grand Prix Corp., 828 F.2d 307, 310 (5th Cir. 1987) (quotation omitted); accord Brandon v. Sage Corp., 808 F.3d 266, 272 (5th Cir. 2015) (citing Aryain, 534 F.3d at 481-82). "In other words, plaintiff must complain about working conditions and give her employer a reasonable time to remedy them before she concludes that the employer is acting deliberately to force her resignation." Ricks v. Friends of WWOZ, Inc., No. CV 18-9767, 2019 WL 4671582, at *7 (E.D. La. Sept. 25, 2019) (citing Hinojosa v. CCA Props. of Am., LLC, 400 F. App'x 920, 923-24 (5th Cir. 2010); Haley v. Alliance Compressor LLC, 391 F.3d 644, 652 (5th Cir. 2004); McKethan v. Tex. Farm Bureau, 996 F.2d 734, 741 (5th Cir. 1993)).

Ms. Bradford claims that she felt forced to resign after being falsely accused of providing false statements and obstructing a Health, Safety, and Environment investigation. [ECF No. 1] ¶ 29. She alleges that she communicated with a superior about the incident "over the next few days" before resigning, giving Reich an opportunity to remedy the working conditions which led to her resignation. Id. Ms. Bradford also gave Reich the opportunity to remedy the alleged discrimination she experienced by being left out of site meetings and experiencing derogatory remarks from Mr. Roche based on her protected characteristics. As discussed above, she reported his behavior at least twice to two different supervisors, neither of whom worked to remedy the situation.

> In determining whether a reasonable employee would have
> felt compelled to resign, [the Fifth Circuit has]
> considered whether the following factors are present:
> (1) demotion; (2) reduction in salary; (3) reduction in
> job responsibilities; (4) reassignment to menial or
> degrading work; (5) reassignment to work under a younger
> supervisor; (6) badgering, harassment, or humiliation by
> the employer calculated to encourage the employee's
> resignation; or (7) offers of early retirement or
> continued employment on terms less favorable than the
> employee's former status.

Matherne v. Ruba Mgmt., 624 F. App'x 835, 841 (5th Cir. 2015)

(quoting Brown, 237 F.3d at 566). "In addition, a plaintiff may be

constructively discharged if the employer gives the employee an

ultimatum to quit or be fired. However, in these ultimatum cases,

courts have required something beyond the employee's subjective

belief that termination was inevitable." Perret v. Nationwide Mut.

Ins. Co., 770 F.3d 336, 338-39 (5th Cir. 2014) (citations omitted).

Bradford does not claim that she was demoted, but she does

allege that her job responsibilities were reduced when she was

excluded from site management meetings. She also claims that Roche

reassigned her "to menial or degrading work" by relegating her to

secretarial duties such as printing and hanging signs. She also

alleges that she was subjected to "badgering, harassment, or

humiliation" by supervisors in the company, though she does not

specifically allege that these remarks were calculated to

encourage her resignation. To meet the default judgment standard,

Plaintiff does not need to make a definitive showing of

constructive termination but merely must plausibly plead it. Her

claims of harassing remarks based on her race and sex, constant transfers, deprivation of a holiday, inferior lodgings to her male counterparts, exclusion from meetings and relegation to secretarial work, and finally false accusation of filing a false report and interfering with an investigation plausibly support her claim that she was constructively terminated by Reich. Therefore, default judgment on her claim of constructive termination is appropriate.

### 2. Hostile Work Environment

> To establish a race or gender-based hostile work environment claim under Title VII, a plaintiff must prove each of the following:
> (1) membership in a protected group; (2) harassment (3) based on a factor rendered impermissible by Title VII; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment yet failed to address it promptly.

Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 654 (5th Cir. 2012). To affect a term, condition, or privilege of employment, the harassment complained of must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Hernandez, 670 F.3d at 651. To determine whether conduct is severe or pervasive, courts look to the totality of the circumstances. Stewart v. Miss. Transp. Com'n, 586 F.3d 321, 330 (5th Cir. 2009); See Ricks v. Friends of

WWOZ, Inc., No. CV 18-9767, 2019 WL 4671582, at *4 (E.D. La. Sept. 25, 2019)

First, as discussed above, Bradford is a member of a protected group who claims she was discriminated against due to her protected characteristics, namely race and sex. She has also provided evidence of harassment based on those characteristics, specifically Mr. Roche's derogatory comments about her race and sex. Furthermore, she has alleged that Mr. Roche excluded her from jobsite meetings and relegated her to secretarial duties because of her race and sex. She also claims that she was given inferior lodging compared to her male counterparts. She explains that Mr. Roche's impermissible motive was evidenced by his comments that she was "an old white woman;" that "Mexican men only liked old white women for one thing;" and that "since this company hires women, I'm going to get my wife hired to replace you." [ECF No. 1] ¶¶ 7-8. Finally, Bradford alleges that she reported his behavior to at least two other supervisors, neither of whom addressed it. Plaintiff has successfully pleaded a claim of harassment under Title VII, and therefore she is entitled to default judgment on this claim.

ii. Age Discrimination Claim

Under 29 U.S.C. § 623(a) (the "ADEA"), "[i]t shall be unlawful for an employer to ... discharge any individual or otherwise discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "To establish an ADEA claim, '[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision.'" *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)); See Kobos v. BeyondTrust, Inc., No. 3:20-CV-3488-K, 2021 WL 5404669, at *3 (N.D. Tex. Nov. 1, 2021), report and recommendation adopted, No. 3:20-CV-3488-K, 2021 WL 5399845 (N.D. Tex. Nov. 18, 2021), vacated, No. 3:20-CV-3488-K, 2021 WL 5629147 (N.D. Tex. Nov. 30, 2021).

Bradford alleges that

> "Defendant failed on numerous occasions to address or correct conduct by Mr. Roche where he referred to her as old or told her to go home and be a grandmother. Instead, the Defendant denied that the conduct occurred and moved Ms. Bradford from site to site in a manner that it did not employ with her younger male colleagues."

[ECF No. 1] ¶ 47. Plaintiff claims that Roche's discriminatory statements provide evidence that Reich's stated reasons for moving Ms. Bradford from site to site were pretext for unlawful discrimination, and that if not for her age, none of the poor treatment she received would have occurred. Bradford has provided

17

sufficient evidence to plausibly plead that her age was a contributing factor to her negative employment outcomes at Reich.

C. Plaintiff is Partially Entitled to her Requested Relief

Plaintiff asks the Court for (1) back pay; (2) mental anguish and emotional distress; and (3) attorney's fees. Having read the pleadings and reviewed the evidence presented at the hearing, the Court has determined that she is entitled to back pay and attorney's fees but declines to grant mental anguish and emotional distress.

1. Plaintiff is entitled to $49,488.83 in back pay

"In a Title VII case, there is a presumption in favor of awarding back pay in order to effectuate the statutory goal of 'mak[ing] persons whole for injuries suffered on account of unlawful employment discrimination.'" Garner v. Grenadier Lounge, No. 06-13318, 2008 WL 2761158, *2 (E.D. Mich. July 15, 2008), (quoting Albermarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975)). Back pay compensates the employee for what [s]he would have earned absent the employer's violation of Title VII. Hill v. Enchantment Hotels, Inc., No. 4:23-CV-00979-O, 2024 WL 3427040, at *4 (N.D. Tex. July 16, 2024) (citing Palasota v. Haggar Clothing Co., 499 F.3d 474, 482 (5th Cir. 2007), order clarified (Sept. 27, 2007) (cleaned up)). "Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the [the

Equal Employment Opportunity] Commission." 42 U.S.C. § 2000e-5. The burden of proof of failure to mitigate lies on the defendant to show that the employee did not exercise reasonable due diligence to obtain alternative work. Hill, 2024 WL 3427040, at *4; West v. Nabors Drilling USA, Inc., 330 F.3d 379, 393 (5th Cir. 2003).

At the evidentiary hearing on July 15, 2025, Plaintiff testified that her salary at Reich was $70,000 per year plus a $200 weekly per diem, totaling an annual salary of $80,400 per year. After her constructive termination from Reich, Bradford testified that she was unemployed for six and a half months, after which time she found employment as a sales associate at Dillard's working thirty-two to thirty-eight hours per week and making $19 per hour. Bradford estimates that she makes $2527 per month at Dillard's.

Ms. Bradford asks for $37,916.67 in back pay for the six and a half months she spent looking for other employment after her constructive termination from Reich. To get this number, she divided her annual salary of $70,000 by 12, giving her a monthly salary of $5,833.33 which she then multiplied by 6.5 to get $37,916.67. She asks for an additional $11,572.16 in back pay for the time she has been working at Dillard's, which reflects the difference between her monthly salary at Dillard's and her monthly salary at Reich. Adding these numbers together, she asks for a total of $49,488.83.

Plaintiff's testimony provides sufficient evidence to support entry of default judgment awarding her $49,488.83 in back pay. See Halter v. Beauty Basics, Inc., No. 4:22-CV-1659, 2023 WL 4054713, at *3 (S.D. Tex. May 25, 2023), report and recommendation adopted, No. 4:22CV1659, 2023 WL 4054965 (S.D. Tex. June 16, 2023); Vaughn v. Nebraska Furniture Mart, LLC, No. 3:19-CV-1220-C-BK, 2020 WL 1695695, at *3-5 (N.D. Tex. Mar. 12, 2020), report and recommendation adopted, No. 3:19-CV-1220-C, 2020 WL 1694782 (N.D. Tex. Apr. 7, 2020) (entering award for back pay after defendant's default in Title VII case). Therefore, the Court GRANTS Bradford's motion for default judgment and awards her back pay for her loss of income since her constructive termination.

### 2. Plaintiff is Not Entitled to Mental Anguish and Emotional Distress

The Fifth Circuit has held that:

Compensatory damages for emotional harm, including mental anguish, will not be presumed simply because the complaining party is a victim of discrimination. DeCorte v. Jordan, 497 F.3d 433, 442 (5th Cir. 2007). The award of damages must be supported by specific evidence of the nature and extent of the harm. Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927, 938 (5th Cir. 1996). Such evidence may include medical or psychological evidence in support of the damage award. Id. at 940. A plaintiff's

conclusory statements that he suffered emotional harm
are insufficient. See Brady v. Fort Bend Cnty., 145 F.3d
691, 719 (5th Cir.1998).

Miller v. Raytheon Co., 716 F.3d 138, 147 (5th Cir. 2013)
(quoted by Hill, 2024 WL 3427040, at *6).

There are two necessary elements a plaintiff must demonstrate
to recover for emotional distress (1) "specific evidence of the
nature and extent of the harm;" (2) "more than vague allegations
to support [the] claim;" and "corroboration and expert testimony"
are preferred. Thomas v. Tex. Dep't of Crim. Just., 297 F.3d 361,
368 (5th Cir. 2002). Bradford claims that she suffered from panic
attacks, headaches, and sleeplessness due to the harassment she
endured at Reich. She testified that she has a stiff neck, and she
returned to smoking after quitting three years ago due to her
treatment at Reich. She also said that she has been diagnosed with
anxiety and depression by a Doctor Jessica Alberry at Kentucky
Cares in Paducah, Kentucky. Bradford further testified that she
currently takes BuSpar for anxiety and over-the-counter antacids
to manage her symptoms. She also stated that she started seeing a
therapist in June 2025, but she could not recall the therapist's
name.

While Bradford does provide specific details about her
symptoms, she has "presented no expert medical or psychological
testimony of the extent of [her] mental anguish." Miller, 716

21

F.3d at 147. In Miller, the Fifth Circuit vacated the plaintiff's mental anguishes award because he did not "seek the assistance of any health care professional or counselor" or provide evidence of such behavior. Id. Although Plaintiff testified that she has sought treatment for anxiety, she has not presented this Court with expert testimony connecting her present symptoms with her experience at Reich. In Vaughn v. Nebraska Furniture Mart, LLC, a Texas court denied the plaintiff damages for emotional distress because he "fail[ed] to support his claim with a psychologist's testimony." Vaughn v. Nebraska Furniture Mart, LLC, No. 3:19-CV-1220-C-BK, 2020 WL 1695695 at *4 (N.D. Tex. Mar. 12, 2020), report and recommendation adopted, No. 3:19-CV-1220-C, 2020 WL 1694782 (N.D. Tex. Apr. 7, 2020). The Court compares the result in Vaughn with the Fifth Circuit's decision in DeCorte v. Jordan, where the court upheld a jury grant of damages for emotional distress when a psychologist testified describing the plaintiffs' symptoms and their likelihood of being due to job loss. DeCorte v. Jordan, 497 F.3d 433, 434 (5th Cir. 2007). Here, Bradford fails to provide expert testimony to corroborate her assertion that her present symptoms are due to the Title VII violations she experienced at Reich. Therefore, the Court declines to grant emotional distress damages.

### 3. Attorney's Fees

Under Title VII, "[i]n any action or proceeding under this

subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs[.]" 42 U.S.C. § 2000e-5. In the Fifth Circuit, courts use the lodestar method to calculate attorney's fees. "A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." Heidtman v. Cnty. of El Paso, 171 F.3d 1038, 1043 (5th Cir. 1999). To facilitate in the lodestar calculation, courts require plaintiffs to produce documentation sufficient to support their requested fees. Hill, 2024 WL at *5 (citing Gagnon v. United Technisource, Inc., 607 F.3d 1036, 1044 (5th Cir. 2010).

After conducting the Lonestar calculation, a Court can alter an award of attorney's fees based on its consideration of the Johnson factors, which include:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson v. Ga. Highway Express, Inc., 488 F.2d 714,

717–19 (5th Cir. 1974), <u>abrogated on other grounds by</u> <u>Blanchard v. Bergeron</u>, 489 U.S. 87 (1989).

Here, Plaintiff requests $3,000 in attorney's fees. To support this request, Bradford's counsel testified that she expended 10 hours working on this case at a rate of $300 per hour. The Court assumes the truthfulness of Bradford's allegation and will award attorney's fees in the amount of $3,000. The Court finds no need to adjust this award based on the <u>Johnson</u> factors.

IV. Conclusion

Based on the foregoing, the Court finds that Plaintiff's motion for default judgment should be GRANTED in part and DENIED in part. Accordingly, the Court enters default judgment as follows:

(1)   Plaintiff shall be awarded back pay in the amount of $49,488.83; and

(2)  Plaintiff shall be awarded attorney's fees in the amount of $3,000.

SO ORDERED this 31st day of July 2025.

/s/ David Bramlette
DAVID C. BRAMLETTE III
UNITED STATES DISTRICT JUDGE